IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAWRENCE D. REDMAN,  )
        Plaintiff  )
          )  Civil Action No. 06-1000
vs.  )  Judge Gary Lancaster/
          )  Magistrate Judge Amy Reynolds Hay
OFFICER SCOTT KENNEDY  )
        Defendant  )

REPORT AND RECOMMENDATION

I.    RECOMMENDATION

It is respectfully submitted that the Defendant's Motion for Summary Judgment, Dkt. [63], should be granted.

II.    REPORT

Plaintiff, Lawrence D. Redman ("Redman"), was a pretrial detainee confined at the Westmoreland County Prison at the time he initiated this suit. Redman complains that Defendant Kennedy used excessive force during a cell extraction, in violation of Redman's constitutional rights.

Redman seeks to impose liability against the Defendant based on events taking place on October 10, 1005. According to his deposition, Redman was playing basketball in the gymnasium and another inmate, Tim Stitch, kept pushing the door to the gymnasium open, in an effort to disrupt Plaintiff's play. Dkt. [66], Ex. B - Redman Deposition, p. 25, lines 14-25. Plaintiff ultimately kicked the door shut and bounced the ball off of the window to the door three times. Id. at p. 25 line 25 - p. 26, lines 1-3. Whereupon, Defendant Kennedy entered the gymnasium to investigate the apparent disturbance. Id. at p. 26, lines 4-6. Redman was ordered to go to his cell to retrieve his belongings because he was being taken to the Disciplinary Unit. Id. at p. 26, lines 8-17. Once in his cell, Redman was ordered three times by a sergeant to put his hands through the wicket door, and Plaintiff refused. Id. at p. 29, lines 14-24; p. 35, lines 2-14.

An extraction team was assembled and Redman contends that excessive force was used by Defendant Kennedy during the extraction. Specifically, Redman claims that Defendant Kennedy "smacked me with the shield, smashed me up against the wall, tried to bang my head against the wall." Id. at p. 31, lines 13-15.

Presently before the Court is Defendant Kennedy's Motion for Summary Judgment. For the reasons that follow, the motion should be granted.

**Standard of Review**

The standard for granting a motion for summary judgment is well established. Courts should grant motions for summary judgment when there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). The party moving for summary judgment bears the initial burden to show the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In ruling on a motion for summary judgment, courts must resolve all issues in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 587-88 (1986). If no rational trier of fact could find for the non-moving party, summary judgment is appropriate. Id. at 588. Where the complaint is filed by a *pro se* plaintiff, it should be liberally construed so as to do substantial justice. Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citing Fed. R. Civ. P. 8(f)).

**Discussion**

Fuentes v. Wagner sets forth the standard for evaluating excessive force claims brought by pretrial detainees under the Due Process Claim of the Fourteenth Amendment:

> A detainee may not be punished prior to an adjudication of guilt in accordance with the due process of law. However, once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that

> are calculated to effectuate this detention. Thus, restraints that are reasonable related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting. Obviously, ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both. Consequently, whether . . . restrictions and practices constitute punishment in the constitutional sense depends on whether they are rationally related to a legitimate nonpunitive government purpose and whether they appear excessive in relation to that purpose. Thus, there is a distinction between punitive measures that may not be constitutionally imposed prior to a determination of guilt and regulatory restraints that may.

206 F. 3d 335, 342 (3d. Cir. 2000) (internal citations omitted).[1] For a pretrial detainee to state an excessive force claim against a prison official, he must adduce evidence that the force used was applied "maliciously and sadistically to cause harm" and not "in a good-faith effort to maintain or restore discipline." Hudson v. McMillian, 503 U.S. 1 (1992).

The factors that are relevant to this inquiry include: "the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Hudson, 503 U.S at 7 (citations omitted). An inmate does not have to show that the harm suffered was sufficiently serious in order to make out a constitutional violation where excessive

---

[1] Although Redman does not state the specific grounds for his constitutional claims, his complaint appears to allege a claim for use of excessive force. The Eighth Amendment does not directly apply to pretrial detainees. Wilson v. Spain, 209 F.3d 713, 715 (8th Cir. 2000) ("the Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences."). Instead, the relevant inquiry is the due process analysis set forth in Bell v. Wolfish, 441 U.S. 520 (1979) (applying Fifth Amendment due process clause to Federal pretrial detainees), and Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005) (applying Bell's analysis, under Fourteenth Amendment due process clause, to State pretrial detainees). Under Bell, the question is whether the challenged conditions of confinement "amount to punishment of the detainee . . . prior to an adjudication of guilt in accordance with due process of law." 441 U.S. at 535. Therefore, while the Eighth Amendment protects convicted prisoners from "cruel and unusual punishments," the Due Process Clause of the Fourteenth Amendment protects pretrial detainees from the purposeful infliction of punishment without due process of law. Hubbard, 399 F.3d at 158.

force was used. Absence of serious injury does not end the inquiry. Hudson, 503 U.S. at 7. See also Brooks v. Kyler, 204 F. 3d 102, 104 (3d. Cir. 2000) ("Following Hudson's focus on the force used, as opposed to the injury inflicted, we conclude that although the degree of injury is relevant for any [constitutional violation] analysis, there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force").[2]

Plaintiff Redman admits that he was involved in an altercation with Inmate Stitch that ultimately resulted in Officer Kennedy telling Redman to return to his cell and pack his belongings because he was being taken to the Disciplinary Unit. Redman admits that he was ordered to "put his hands through the wicket, and all I did was went and sat down on my bunk." Redman Depo, at p. 29, lines 4-24. Redman admits that he refused the direct orders to voluntarily remove himself from the cell, id. at p. 35, lines 2-14, and knew that his actions would result in forcible extraction. Id. at p. 35, lines 9-14.

Aplying the above-noted factors, it appears that the cell extraction was not imposed for the purpose of punishment but for the legitimate governmental purpose of ensuring security and order at the jail. See Fuentes, 206 F.3d at 342. Hence, there was no constitutional violation.

Further, we note that it is the policy of the Westmoreland County Prison to videotape cell extractions. The videotape of the cell extraction at issue in this case demonstrates that Redman refused direct orders at least three times to voluntarily remove himself from the cell and proceed to the Disciplinary Unit. Further, upon his repeated refusal to obey orders, the extraction team moved into place, physically removed Redman from his cell and escorted him to the Disciplinary Unit. Finally, during the extraction process, none of the officers, including

---

[2] Redman denies any broken bones or cuts requiring stitches. Id. at p. 39, lines 15-17. It appears that the only injury complained of as a result of the cell extraction is that his skin was irritated as a result of mace used not by Defendant Kennedy but by one of the other extraction officers. Id. at p. 39, lines 4-7.

Defendant Kennedy, kicked Redman, banged his head into the wall or otherwise physically assaulted him. There was no yelling, swearing, or threats of any kind. There simply is no evidence that Defendant Kennedy applied force during the cell extraction maliciously or sadistically to cause harm and not in a good-faith effort to maintain or restore discipline. See Hudson, 503 U.S. at 6-7. No rational trier of fact could view the videotaped extraction and find for Redman in this case. Accordingly, the Court should grant summary judgment in favor of Defendant Kennedy.

**Conclusion**

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute waiver of any appellate rights.

Respectfully submitted,

/s/ *Amy Reynolds Hay*
United States Magistrate Judge

Dated: 7 November, 2008

cc: Hon. Gary L. Lancaster
     United States District Judge

     Lawrence D. Redman
     GX 0823
     SCI Camp Hill
     P.O. Box 8837
     Camp Hill, Pa 17001

     All counsel of record by Notice of Electronic Filing